**FILED**
MAY 24 2016


IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN RYAN COPPLE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MARMEN ENERGY COMPANY,<br><br>　　　　Defendant. | CIV. 16-4068<br><br>COMPLAINT |

Plaintiff John Ryan Copple ("Copple"), by and through his attorney, Eric J. Cleveringa, brings this action for damages and other legal and equitable relief from Defendant Marmen Energy Company's ("Marmen") violation of laws, including but not limited to proscribing disability discrimination in employment, retaliatory termination of employment, and for such other causes of action against Marmen as stated in this Complaint; Copple alleges the following as his claims against the Defendants:

## PARTIES

1.　Copple resides in Brandon, Minnehaha County, South Dakota, and was an "employee" of Marmen at all times material to this action, as that term is defined under the Americans with Disabilities Act and SDCL 20-13-1(7).

2.　Marmen is a Delaware corporation and at all times material to this actions was doing business in Brandon, Minnehaha County, South Dakota, and was an "employer" within the State of South Dakota and within the jurisdictional coverage of the Americans with Disabilities Act and SDCL 20-13-1(7).

## JURISDICTION

3. Copple, a former employee of Marmen, brings this action under 42 U.S.C. § 12117 ("Americans with Disabilities Act"); under 28 U.S.C. §§ 1331, 1337 and 1343; under 28 U.S.C. § 1367, and under South Dakota law to redress the wrongs done to him by Marmen as a result of Marmen's discriminatory and unlawful acts.

4. This court has pendant jurisdiction under 28 U.S.C. § 1367 for the state-law claims asserted herein.

5. On or around April 21, 2015, Copple timely filed a discrimination intake questionnaire with the South Dakota Division of Human Rights ("SDDHR"). Copple then signed and executed a formal "Charge of Discrimination" on or around July 7, 2015.

6. On February 9, 2016, Copple received a Determination of No Probable Cause and Order of Dismissal.

7. Subsequently, Copple asked the Equal Employment Opportunity Commission ("EEOC") to review the finding and order, or in the alternative issue a Notice of Right to Sue.

8. The EEOC issued a Notice of Right to Sue on February 22, 2016, attached hereto as Exhibit A.

## VENUE

9. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Minnehaha County, South Dakota.

## FACTS

10. Copple began employment with Defendant in early 2014 as a Non-Destructive Testing ("NDT") inspector.

11. Before employment with Marmen, Copple worked in the Alaskan oil fields. He consistently performed 12-hour shifts and the work was physically and mentally demanding. Copple also worked as a boat captain specializing in halibut excursions. Before employment with Marmen, Copple never filed a workers compensation or disability claim.

12. On or about August 23, 2014, while in the course and scope of his employment with Marmen, Copple's head struck a metal hose reel protruding from a wall and he suffered an injury, a fact of which his employer received actual knowledge on the day of the injury.

13. As a result of the impact between the metal object and Copple's head, Copple suffered a concussion and was sent to the emergency room at Sanford Health in Sioux Falls, South Dakota. Copple reported to Dr. Richard Briggs that he was suffering from headaches and reduced strength on his entire left side, including his left arm and leg.

14. Copple was diagnosed with a concussion.

15. A few days later, Copple again reported that he was suffering from headaches, nausea, as well as behavior change and difficulty with memory. His nausea manifested into vomiting.

16. Defendants treated Plaintiff's work-injury as compensable

17. Doctors performed on Copple a CT of his head, MRI of the brain, and MR of the cervical spine. The results showed no abnormality.

18. Copple, however, continued to suffer neurological and physical symptoms resulting from the accident.

19. One of the many symptoms impacting Copple was frequent, debilitating post-accident migraines. The migraines severity required Copple to seek medical treatment—called a

headache or migraine "cocktail." Copple also suffered from balance loss, dizziness, headaches, mood swings, constant confusion, memory loss, numbness, nausea, vomiting, and others.

20. Copple's work-injury symptoms affected his seeing, sleeping, walking, standing, sitting, lifting, speaking, learning, reading, concentrating, thinking, communicating, interacting with others, and working.

21. Around late October 2014, Copple saw Dr. Adil Shaikh, a pain specialist in Sioux Falls, South Dakota, to address his frequent and debilitating post work-accident migraines. Dr. Shaikh diagnosed Copple with post-concussive syndrome. Dr. Shaikh prescribed several medications to address Copple's symptoms. Also, Dr. Shaik suggested to Copple that he attempt to return to work on a limited basis—no more than two days a week for four hours—and in an office role, not the inspector position Copple previously held.

22. Copple attempted to return to work around early November 2014 but his symptoms prevented him from functioning in the work environment.

23. Marmen and its insurer Acuity demanded that Copple see Jim Andrikopoulos, Ph.D., on January 13, 2015, for an independent medical evaluation.

24. Andrikopoulos is well-known in the workers compensation defense industry, often presenting at workers compensation symposiums and publishing numerous articles regarding malingering in head trauma patients.

25. Because of Andrikopoulos' work for employers and insurance carriers, his opinions lack credibility. In 2012, the Iowa Workers' Compensation Commissioner noted that Dr. Andrikopoulos is "well-known to the division, but his work on behalf of employers/insurance carriers is considered predictable and has long been considered less

convincing – as aptly noted within the record." *Islamovic v. Bishop Drumm Care Ctr. & Alternative Ins. Mgmt. Svcs.*, 2012 WL 2860759 (Iowa Workers' Comp. Com'n, June 11, 2012).

26. Despite Copple passing all three malingering tests and based solely on one examination and a review of medical records, Andrikopoulos diagnosed that Copple was malingering. Andrikopoulos concluded that, despite Copple's obvious mental and physical manifestations of symptoms resulting from the work injury, all treatments Copple received after the acute assessment of his injury were unnecessary. Andrikopoulos concluded no further treatment was necessary for Copple and that Copple was able to return to his pre-injury job with no restrictions.

27. Similar to *Islamovic*, where the Commissioner found "no support for the findings or opinion of Dr. Andrikopoulos in the medical history of this matter[,]" *id.* at *16, Andrikopoulos' opinion regarding Copple's diagnosis has no support in Copple's medical history.

28. Also similar to *Islamovic*, where the Commissioner "concluded that the opinion of Dr. Andrikopoulos lack sufficient foundation for serious consideration[,]" *id.*, Andrikopoulos' opinion here lacks foundation and should not have been relied on to terminate Copple's benefits.

29. Yet, based solely on Andrikopoulos' biased opinion, Marmen and Acuity terminated Copple's workers' compensation benefits on February 11, 2015.

30. After Andrikopoulos' remarkable conclusions, Copple was admitted several times to Avera Behavioral Health for post-concussive symptoms related to his work injury.

31. In mid-March 2015, under the supervision of his primary care physician Dr. Richard Briggs at Avera Hospital, Copple underwent an intense occupational rehabilitation program. The program drastically improved his ability to function in the work environment.

32. Upon completion of the rehabilitation program, Copple returned to work under Dr. Briggs' supervision and restrictions.

33. Copple discussed his restrictions with his supervisor, Yannick Laroche, and with the plant safety officer and plant manager. Copple requested reasonable accommodations—that he split time between the noisy and physically demanding role of an NDT inspector and as an administrative assistant in an office setting.

34. Dr. Briggs recommended and Copple start at 1 hour a day as an NDT inspector and 7 hours as an administrative assistant. Then, as Copple assimilated and improved, he could increase his time as an NDT inspector and reduce his time as an administrative assistant, until he fully returned to his pre-work-injury position of NDT inspector.

35. Marmen accommodated Copple and allowed him to work 1 hour a day as an NDT inspector and 7 hours as an administrative assistant.

36. With those reasonable accommodations, Copple was able to work full, 8-hour days.

37. As he improved, Copple then requested to work 4 hours as an NDT inspector and 4 hours as an administrative assistant, based on his doctor's recommendations

38. Marmen accommodated Plaintiff's request and allowed him to work 4 hours a day as an NDT inspector and 4 hours as an administrative assistant.

39. With those reasonable accommodations, Copple was able to work full, 8-hour days.

40. On March 26, 2015, Copple petitioned for a hearing with the South Dakota Department of Labor based on Defendants' unfounded cessation of his workers compensation benefits.

41.     Then, within days after Marmen received its Notice of Copple's Petition for a Hearing, Marmen terminated Copple's employment.

42.     Marmen told Copple it was no longer able to accommodate his restrictions, despite demonstrating in fact that it could accommodate his restrictions.

43.     Further discrediting Marmen's claim that it could no longer accommodate Copple's restriction was Copple contributing in the two roles he worked. As an NDT inspector, Copple was performing all tasks as required. As an administrative assistant, Copple was working on a project that had yet to be completed.

44.     After his termination, Copple even asked about a re-hire program. Copple's supervisor said they would only consider it if Copple did not have any restrictions.

## COUNT ONE

### Violation of Title 1 of the Americans with Disabilities Act

45.     Copple incorporates all paragraphs of this complaint as if fully set forth under this count.

46.     Marmen is an "employer" within the meaning of the ADA.

47.     Marmen is engaged in an "industry affecting commerce" within the meaning of the ADA and the Civil Rights Act of 1964.

48.     Due to Copple's work injury, Copple was an individual with a "disability," as that term is defined by the ADA.

49.     Copple was a "qualified person with a disability" within the meaning of the ADA, 42 U.S.C. § 12111(8), as he was an individual with a disability who, with or without reasonable accommodations, could perform the essential functions of various positions for Marmen in their Brandon, South Dakota plant.

50. Marmen refused to permit Copple to continue to work because of his disability.

51. Marmen refused to permit Copple to continue to work because of his record of having a disability, which is defined by the ADA as a physical or mental impairment that substantially limited one or more of Plaintiff's major life activities.

52. Marmen refused to permit Copple to continue to work because it perceived Copple as having a disability.

53. Marmen's actions toward Copple on the basis of his disability or perceived disability constitutes a discriminatory act prohibited by the ADA, 42 U.S.C. § 12112(a).

54. Marmen's discriminatory conduct resulted in the termination of Copple from his employment in violation of federal law.

55. The unlawful employment practices complained of above were intentional and/or were done with malice or reckless indifference to Copple's federally protected rights.

56. Marmen's discriminatory actions toward Copple based on his disability, record of disability, or perceived disability, has caused Copple to suffer damages, including lost and future wages, medical expenses and employment benefits.

57. Marmen's discriminatory actions toward Copple based on his disability, record of disability, or perceived disability, has caused Copple to suffer past and future substantial damages for mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

58. Under the ADA, 42 U.S.C. §12117(a), which incorporates by reference the Civil Rights Act of 1964, 42 U.S.C. §2000e-5, Copple is entitled to back pay and lost benefits in an amount to be determined at trial.

59. Under 42 U.S.C. § 1981(a) and 42 U.S.C. § 12117(a), Copple is entitled to recover compensatory damages, including damages for emotional pain, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. Because Marmen's discriminatory conduct was intentional and/or was taken with malice or reckless indifference to the Copple's federally protected rights, Copple is entitled to recover punitive damages.

61. Under 42 U.S.C. § 12205, Copple is entitled to his reasonable attorneys' fees, litigation expenses and costs incurred in this action.

## Count Two

### Violation of SDCL 20-13-10

62. Copple incorporates all paragraphs of this complaint as if fully set forth under this count.

63. Marmen is an "employer" at all times material to this action within the meaning of SDCL 20-13-1(7).

64. Copple was an "employee" at all times material within the meaning of SDCL 20-13-1(6).

65. Due to Copple's work injury, Copple is an individual with a "disability" as that term is defined under SDCL 20-13-1(4) and 20-13-1(4)(a).

66. Marmen refused to permit Copple to work because of his disability, which is defined by SDCL 20-13-1(4) as a physical or mental impairment that substantially limited one or more of Copple's major life activities.

67. Marmen refused to permit Copple to work because it perceived Copple as having a disability.

68. Marmen's actions toward Copple on the basis of his disability or perceived disability constitutes an unfair or discriminatory employment practice prohibited by SDCL 20-13-10.

69. Marmen terminated Copple from his employment in violation of state law.

70. The unlawful employment practices complained of above were intentional and/or were done with malice or reckless indifference to the rights set in place by the law of the State of South Dakota.

71. Marmen's discriminatory actions toward Copple based on his disability, record of disability, or perceived disability has caused Copple to suffer damages, including lost and future wages, medical expenses, and employment benefits.

72. Marmen's discriminatory actions toward Copple based on his disability, record or disability or perceived disability has caused Copple to suffer past and future substantial damages for mental anguish, loss of enjoyment of life and other non-pecuniary losses.

73. Under SDCL 20-13-35.1, Copple is entitled to compensatory and punitive damages.

### COUNT THREE

### Wrongful Discharge / Retaliatory Termination

74. Copple incorporates all paragraphs of this complaint as if fully set forth under this count.

75. Under SDCL 62-3-1, 62-3-3, and 62-3-18, all employees injured during the course of their employment have the right to compensation without interference.

76. As evidenced by Copple's termination days after Marmen received Notice of Copple's petition for a hearing for workers' compensation benefits, and despite the fact that

Copple was functioning with his reasonable accommodations, Marmen terminated Copple for seeking workers compensation benefits.

77. Terminating an employee for seeking workers compensation benefits violates South Dakota law, specifically SDCL 62-1-16.

78. Under SDCL 62-1-16, Marmen is civilly liable for wrongfully discharging Copple in whole or in part for seeking workers compensation benefits.

79. As a result of Marmen's wrongful discharge, Copple suffered damages, including lost and future wages, medical expenses and employment benefits.

80. As a result of Marmen's wrongful discharge, Copple suffered past and future substantial damages for mental anguish, medical expenses and loss of enjoyment of life, as well as other non-pecuniary losses.

## COUNT FOUR

### Intentional Infliction of Emotional Distress

81. Copple incorporates all paragraphs of this complaint as if fully set forth under this count.

82. Marmen intentionally terminated Copple's employment because of his disability and/or in retaliation for seeking workers compensation benefits, knowing that in doing so it would cause Copple severe emotional distress.

83. As a direct and proximate result of Marmen's intentional and discriminatory action in terminating Copple's employment, Copple has suffered severe emotional distress from and after April 7, 2015, and will with reasonable certainty continue to suffer emotional distress in the future, all in an amount to be determined by the Court or the Jury at trial.

**WHEREFORE**, Plaintiff prays for relief as follows:

A. For Copple's past pecuniary losses, including the loss of wages and benefits in an amount to be decided by a jury at trial;

B. For front pay in an amount to be determined by a jury at trial;

C. For Copple's compensatory damages in an amount to be determined at trial;

D. For punitive damages in an amount to be determined at trial;

E. For attorneys' fees, costs and disbursements incurred in this action; and

F. For such other and further relief as the Court seems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff requests a trial by jury on all counts.

## PUNITIVE DAMAGES DEMAND

The Defendant is hereby put on notice that the Plaintiff is requesting punitive damages on all counts set forth in this action.

Dated this _____ day of May, 2016.

CADWELL SANFORD DEIBERT & GARRY, LLP

_____
Shawn. M. Nichols
200 East 10th Street, Suite 200
PO Box 2498
Sioux Falls, SD 57101-2498
(605) 336-0828
snichols@cadlaw.com
Attorney for Plaintiff